**WHARTON, Secretary of Police Jury, v. Mc-DONALD. \***

**No. 5022.**

Court of Appeal of Louisiana.
Second Circuit.

June 29, 1935.

Wm. C. Pegues, Sr., of Mansfield, for appellant.

A. B. Cavanaugh, of Leesville, for appellee.

DREW, Judge.

The police jury of De Soto parish, La., through its secretary-treasurer, instituted this proceeding by rule, ordering defendant to show cause why he should not pay $150 permit fee for the period from August 3, 1934, to December 31, 1934, under the provisions of Ordinance No. 228 of the police jury of De Soto parish, La., for engaging in the sale of intoxicating liquors at retail, together with 5 per cent. per annum interest thereon, and 10 per cent. additional as attorney's fees. There was coupled with the rule a prayer for a writ of provisional seizure, under which the intoxicating liquors owned by defendant were seized.

Defendant by answer denied that he was at any time after August 3, 1934, engaged in the sale of intoxicating liquors at retail.

On these issues the rule was tried, resulting in judgment as prayed for, and sustaining the writ of provisional seizure.

From this judgment defendant has appealed to this court.

The testimony in the case is very short, and there is no dispute as to what it shows. The only dispute is as to the application of the law to the undisputed facts. Plaintiff's case is based upon the ordinance under which the action is brought, which was passed by the police jury of De Soto parish on August 3, 1914, and took effect immediately. It reads as follows:

"Ordinance No. 228.

"To provide for the issuance of permits for sale of intoxicating liquors under the provisions of Act No. 15 of the Legislature of Louisiana for the year 1934, fixing the permit fees, providing for refund of unearned portions of such fees in event of the prohibition of sale of such liquors and repealing all ordinances or parts of ordinances in conflict therewith.

"Section I. Be it ordained by the Police Jury of DeSoto Parish, Louisiana, convened in regular adjourned session, that acting under the provisions of Act 15 of the Legislature of Louisiana for the year 1934, wholesale dealers and retail dealers (as defined in the said Act of the Legislature), located and doing business in DeSoto Parish, Louisiana, are required to obtain from the Secretary of the Police Jury of DeSoto Parish permits for the sale of intoxicating liquors before engaging in business as such and before making any sales of intoxicating liquors.

"Section II. Be it further ordained, etc., that the permit fee for a wholesale dealer for the remainder of the year 1934, shall be the sum of $300.00, paid in advance for such permit, and the permit fee for retail dealer for the remainder of the year 1934, shall be the sum of $150.00, paid in advance for such permit.

"Section III. Be it further ordained, etc., that no permit shall be issued to any person who is not qualified to receive and who has not received from the Supervisor of Public Accounts of the State of Louisiana for the remainder of 1934 a permit as such dealer.

"Section IV. Be it further ordained, etc., that payment of permit fees hereunder shall not exempt the permittee from payment of any license due.

"Section V. Be it further ordained, etc., that if DeSoto Parish or the portion thereof in which any permittee hereunder

should be located should prohibit the sale of intoxicating liquors within the area covered by permit and before the expiration of said permit, then and in that event each and every permit issued hereunder and within said area shall ipso facto be revoked and annulled as of the effective date of such prohibition. In that event there will be refunded to the permittee ⅕th of the permit fee hereunder for each whole calendar month of 1934 from and after said revocation of permit.

"Section VI. Be it further ordained, etc., that an emergency existing because of passage of legislative acts this ordinance shall be effective on and after its adoption.

"Section VII. Be it further ordained, etc., that all ordinances or parts of ordinances in conflict herewith be and the same are hereby repealed."

And upon section 24 of Act No. 15 of 1934, which reads as follows: "This Act shall go into effect according to the Constitution, and shall be otherwise at all times operative and in full force and effect throughout the State, except as to such parishes, wards, and municipalities as may hereafter determine, by popular vote as is hereinafter provided for, that the business of the manufacture, production, sale, use, consumption, handling, storage or distribution of any such malt, vinous, spirituous, alcoholic or intoxicating liquor, shall not be conducted in such parishes, wards or municipalities; and all parishes and municipalities in the State, through their respective governing bodies, shall have the right to regulate the sale of any such malt, vinous, spirituous, alcoholic or intoxicating liquor, by imposing wholesale or retail license taxes on the business of engaging in the sale of any such malt, vinous, spirituous, alcoholic or intoxicating liquor within their respective limits, and to otherwise control and regulate the sale of any such liquor, as authorized in this Act; and such parishes or municipalities may provide for the issuance of permits as herein authorized, and/or may impose license taxes on the basis of gross annual sales, or otherwise, if they so elect, and issue the same for such portions of the year, as they may prescribe."

And a definition of "Retail Dealer," section 1 of Act No. 15 of 1934, page 69, which reads as follows: "This term shall include every dealer, other than a manufacturer or wholesaler, who shall sell, offer for sale, have exposed for sale, or have in his possession for sale, distribution, storage, use or consumption, any alcoholic beverages in any quantity."

The undisputed facts, as shown by the testimony, are that defendant was engaged in business prior to August 3, 1934, at a place some eight or ten miles distant from Logansport. His business consisted of a gasoline filling station, sandwich shop, dance hall, and also the retailing of liquor. The day the ordinance fixing the license or permit fee on retail liquor dealers was passed by the police jury, defendant was informed by his neighbor, who was a member of the police jury. He immediately removed the intoxicating liquors he had on hand from his shelves where it had been exposed for sale, and stored it under his counter. The quantity he had in his place at that time was small, consisting of 34 pints of whisky, 1 quart of brandy, 6 pints of sloe gin, and 6 pints of "Sir Gallant" gin. A short time thereafter, defendant built a place for his business within about one mile of Logansport and proceeded to move his stock of goods, fixtures, etc., there. He employed three young men to assist him in moving, and in moving, naturally, the intoxicating liquors were moved with the other merchandise. While the moving was taking place and at suppertime, defendant left his new location and went to his home to eat supper, leaving the young men in charge to finish up placing the goods in the house. During that time, without the knowledge of defendant, they placed on the shelves, with the beer and other goods, the liquors in question. The place was not yet open for business. During this time and while defendant was at his home, an officer of De Soto parish came into the place of business and, seeing the liquors on the shelves, left word with the young men in charge to tell defendant he wanted to see him in regard to the liquor permit. Defendant returned to his place of business, after having been gone for about an hour, and upon receiving the message and, for the first time, seeing the intoxicating liquors on the shelves, removed them and stored them under the counter. There is no evidence that defendant ever sold any intoxicating liquors or offered them for sale after August 3, 1934, and he positively swears that he had not. He testified that he had the whisky when he quit

as a retailer of it, and was keeping it for his own consumption.

It is clear, from the uncontradicted testimony, that defendant, after the ordinance of the police jury went into effect, did not sell, offer for sale, or expose for sale, or have in his possession for sale or distribution, any intoxicating liquors. He did have some in his possession which he stored under his counter for his own use and consumption. The question then is, under the facts above found, Was defendant a retail dealer in intoxicating liquors under the definition "Retail Dealer," section 1, Act No. 15 of 1934?

Plaintiff's contention, as set forth in its brief, is that a sale was not necessary, and the section above referred to clearly makes defendant a retail dealer. We do not think so. To do so would be to revive the Hood Act (Act No. 39 of 1921, Ex. Sess.), which has been specifically repealed, and make any retail dealer, whether engaged in retailing gasoline, groceries, hardware, or any other commodity, who had in his place of business any quantity of intoxicating liquors for his own use or consumption, a retail dealer in intoxicating liquors, which is clearly not the purpose of the act. The dealer referred to in the definition "Retail Dealer," section 1, Act No. 15 of 1934, means a dealer in intoxicating liquors and not a dealer in gasoline, sandwiches, etc. The words "storage, use or consumption" were no doubt placed in the definition of "Retail Dealer" to prevent a retail dealer in intoxicating liquors from escaping payment of the excise or license tax imposed by Act No. 15 of 1934, by claiming a part of the stock on hand was for personal use and consumption, or that a part of the stock on hand was in storage and not at the time for sale. The very purpose of the act was to prevent a retail dealer in intoxicating liquors from escaping the excise or license tax on any or all of the intoxicating liquors purchased by him for whatever purpose it was purchased, as is plainly set forth in section 11 of the act, which is as follows:

"It is the intent and purpose of this Act to levy an excise or license tax on all taxable alcoholic beverages sold, handled, stored, distributed, used, or consumed in this State, and to collect said tax as far as practicable from the dealer who first handles, stores, distributes, sells, uses or consumes said beverages in Louisiana, but if for any reason the dealer who first stores, handles, sells, distributes, uses or consumes said taxable beverages shall have escaped payment of the taxes herein levied, payment of the aforesaid taxes may be enforced from any dealer or person in whose hands the taxable beverages may be found, where it is evident the taxes have not theretofore been paid, and provided that, in no case, shall there be a duplication of taxation.

"It is furthermore the intent and purpose of this Act that where a person or dealer gives away alcoholic beverages for advertising or for any other purpose whatsoever, the same shall be taxed in the same manner as if it were sold, consumed, stored, or otherwise used, distributed or handled in this State."

Defendant was not a retail dealer of intoxicating liquors.

We therefore conclude that the judgment of the lower court is erroneous, and will have to be reversed.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is reversed, the demands of plaintiff rejected, the writ of provisional seizure is dissolved, and plaintiff is ordered to restore and deliver to defendant's possession the intoxicating liquors seized thereunder; all costs in both courts to be paid by plaintiff.